IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,               )
                                   )       No. 33642-5-III
                Appellant,         )
                                   )
        v.                         )
                                   )       UNPUBLISHED OPINION
JASON ALLEN GRAHAM,                )
                                   )
                Respondent.        )

SIDDOWAY, J. — This is the third sentencing-related appeal following Jason

Graham's 2004 conviction for 10 crimes, 6 of them "serious violent offenses" for

sentencing purposes under RCW 9.94A.030(45). Following the first appeal and the

identification of a sentencing error, the sentencing court reduced his total period of

confinement from 102 years to 82 years. Following the second appeal and our Supreme

Court's confirmation that a court can impose an exceptional reduced sentence for

multiple offense policy mitigation reasons even for conviction of a serious violent

offense, the same court reduced the total period of confinement to 23 years. The State

appeals.

We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2002, Jason Allen Graham, then 20 years old, engaged in a methamphetamine-induced shooting spree in Spokane, during which he fired an AK-47 at 6 police officers. Fortunately, no one but Mr. Graham was injured. Particulars are described in *State v. Jones*, noted at 136 Wn. App. 1009, 2006 WL 3479055,[1] and to a lesser extent in *State v. Graham*, 181 Wn.2d 878, 881, 337 P.3d 319 (2014) (*Graham* II).

The State charged Mr. Graham with 12 crimes, including 6 counts of attempted murder in the first degree. The jury found him guilty of only 2 counts of attempted murder in the first degree but found him guilty of 8 lesser charges or other counts. The jury also returned a special verdict finding that Mr. Graham was armed with a deadly weapon when he committed the attempted murder and assault counts. The court imposed a low-end standard sentence of 829.5 months. It imposed an additional 396 months as firearm enhancements based on the deadly weapon special verdict. The total period of incarceration imposed was more than 102 years.

This court affirmed the convictions and sentence, but our Supreme Court granted review on the firearm enhancement issue and remanded to this court for reconsideration in light of *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). *State v. Graham*, 169 Wn.2d 1005, 234 P.3d 210 (2010) (*Graham* I). The State conceded that the

sentencing court erred when it imposed the longer firearm enhancements based on deadly weapon special verdicts. The case was remanded for resentencing. *State v. Graham,* noted at 163 Wn. App. 1011, 2011 WL 3570120.

At resentencing, Mr. Graham sought an exceptional downward sentence, asking the court to run the sentences for his 10 convictions concurrently, pursuant to RCW 9.94A.535(1)(g)'s "multiple offense policy" mitigating factor.

The sentencing court reduced Mr. Graham's sentence to reflect the proper enhancement but did not deviate from the standard low range sentence initially imposed. Stating that the presumptive sentence was "'an awful lot of time for this'" and that it disagreed with the sentence, the sentencing court nonetheless accepted the State's argument that the legislature intended to foreclose exceptional reduced sentences for serious violent offenses. *Graham* II, 181 Wn.2d at 881 (quoting Verbatim Report of Proceedings (VRP) at 28-29). The court reduced Mr. Graham's sentence to slightly more than 82 years.

Mr. Graham again appealed, arguing that multiple offense policy mitigation can apply to serious violent offenses. While this court affirmed his sentence, the Supreme Court again accepted review and reversed, holding that RCW 9.94A.535(1)(g) plainly

---

[1] Mr. Graham's initial appeal was consolidated with that of his co-defendant, Jeremiah Jones. We cite to this and other unpublished opinions involving Mr. Graham not as authority but for their historical relation to this case. *See* GR 14.1(a).

3

applies to all offenses. *Graham* II, 181 Wn.2d at 882-84. The case was remanded a second time for resentencing. *Id.* at 887.

Following the second remand, the sentencing court engaged in an examination of the purposes of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, that the Supreme Court called for in *Graham* II. It imposed a 120-month sentence on the attempted first degree murder counts and ran the sentences for those and all other counts concurrently. The mandatory enhancements imposed, to be served consecutively, result in a total period of incarceration of 276 months, or 23 years.

The State appeals.

## ANALYSIS

### I. Standard of Review

Sentences must generally fall within the standard sentence range established by the SRA. RCW 9.94A.505(2)(a)(i). A court may impose a sentence outside the standard range if it finds that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9.94A.535(1) provides a nonexclusive list of circumstances that may warrant an exceptional reduced sentence. It is a requirement of all exceptional reduced sentencing that "any reasons relied on for deviating from the standard range must 'distinguish the defendant's crime from others in the same category.'" *State v. Fowler*, 145 Wn.2d 400, 405, 38 P.3d 335 (2002) (quoting *State v. Gaines*, 122 Wn.2d 502, 509, 859 P.2d 36 (1993)).

4

"To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient." RCW 9.94A.585(4). We engage in this analysis by answering three questions under the indicated standards of review:

> "1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.
> "2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.
> "3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion."

*State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005) (quoting *State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997), *overruled in part on other grounds by State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015)).

II.     Application of RCW 9.94A.535(1)(g)

The State challenges the sentencing court's reasoning in reducing Mr. Graham's sentence to only 23 years in reliance on the multiple offense mitigation factor provided by RCW 9.94A.535(1)(g), or, as we will refer to the mitigation factor hereafter, ".535(1)(g)." It challenges (1) the sufficiency of the evidence to support four of the trial court's findings, (2) the trial court's reliance on reasons that it contends do not support

5

departure from the standard range, and (3) the sentence itself, as clearly too lenient. Br. of Appellant at 3.

A constant theme of the State's argument on appeal is that the sentencing court failed to apply the "traditional approach regarding downward departures." Br. of Appellant at 13. Citing a number of cases, it argues that the sentencing court should have focused on whether the difference between the effect of Mr. Graham's first serious violent offense and the cumulative effects of the subsequent serious violent offenses was "nonexistent, trivial or trifling." *Id.* (citing, *e.g.*, *State v. Sanchez*, 69 Wn. App. 255, 260-61, 848 P.2d 208 (1993); *State v. Hortman*, 76 Wn. App. 454, 463-64, 886 P.2d 234 (1994)).

The problem with this argument is that in *Graham* II, the Supreme Court discussed a different examination to be undertaken in imposing an exceptional sentence under .535(1)(g).

### A.     *The examination required by* Graham *II*

The following statutory language is relevant to the examination that *Graham* II now requires, particularly the highlighted language:

> **Departures from the guidelines.** The court may impose a sentence outside the standard sentence range for an offense if it finds, *considering the purpose of this chapter*, that there are substantial and compelling reasons justifying an exceptional sentence. . . .
> . . . .
> (1) Mitigating Circumstances - Court to Consider

6

The court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence. The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences.

. . . .

(g) The operation of the *multiple offense policy of RCW 9.94A.589* results in a presumptive sentence that is clearly excessive *in light of the purpose of this chapter, as expressed in RCW 9.94A.010.*

RCW 9.94A.535[2] (emphasis added).

In *Graham* II, the court stated that it "need look only to .535(1)(g)'s plain meaning to conclude the legislature considered exceptional sentences possible for some serious violent offenses." 181 Wn.2d at 883. It also held that .535(1)(g) "empowers a sentencing judge to reduce a 'clearly excessive' sentence by lessening sentences for the offenses and/or by imposing concurrent sentences"—both of which the sentencing court did in imposing Mr. Graham's reduced total sentence of 23 years. *Id.* at 886.

In addition to asking the Supreme Court to confirm that an exceptional sentence authorized by .535(1)(g) can apply to serious violent offenses, Mr. Graham asked the court to clarify the factual finding a sentencing judge must make to properly rely on .535(1)(g). Significantly, this court had observed that the multiple offense policy was rejected as a basis for imposing a mitigated sentence on Mr. Graham because his other

---

[2] The current statute is identical to the statute that existed in 2002 at the time of the commission of the crime. *Compare* RCW 9.94A.535(1)(g), *with* former RCW 9.94A.535(1)(g) (2002).

current offenses could not be described as "nonexistent, trivial or trifling." *State v. Graham*, 178 Wn. App. 580, 591, 314 P.3d 1148 (2013).

The Supreme Court in *Graham* II was thus squarely presented with whether mitigation under .535(1)(g) requires that other current offenses be nonexistent, trivial, or trifling. It declined to "clarify" the factual finding that must be made to rely on .535(1)(g) mitigation because it found .535(1)(g) to be "clear." *Graham* II, 181 Wn.2d at 886. "It directs the judge to consider if the presumptive sentence 'is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010.'" *Id.* at 886-87 (quoting RCW 9.94A.535(1)(g)). It reproduced the seven policy goals the legislature intends the SRA to advance:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

*Id.* at 887 (quoting RCW 9.94A.010). The court stated, "Sentencing judges should examine each of these policies when imposing an exceptional sentence under .535(1)(g)." *Id.*

*Graham* II could not be clearer as to what should be examined, and it is not whether other current offenses are nonexistent, trivial, or trifling.

8

Having identified *Graham* II rather than *Sanchez* and earlier decisions as controlling, we turn to the issues the State contends are presented for review.

### B. *Issues presented for review*

1. Under a clearly erroneous standard, the reasons supporting the exceptional sentence are supported by the record

The State assigns error to the sentencing court's findings 15, 16, 17 and 18, which are the 4 findings addressing the court's reasons for imposing the exceptional sentence.

Under RCW 9.94A.585(4), we consider whether "the reasons supplied by the sentencing court are not supported by the record which was before the judge." Whether the record supports a sentencing court's reasons calls for a factual determination, which we review under a clearly erroneous standard. *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991). We will reject the trial court's stated reasons only if no substantial evidence supports them. *Id.* Substantial evidence for this purpose is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises. *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997).

Mr. Graham's sentencing memorandum identified a number of facts he urged as providing reasons for an exceptional sentence.[3] It states that "[Mr.] Graham was 20 years old when several minutes of drug-addled, sleep-deprived mayhem changed the course of

---

[3] Mr. Graham continued to rely in 2015 on the sentencing memorandum submitted in 2012. *See* Clerk's Papers at 66-146; VRP at 3-4.

9

his life forever." Clerk's Papers (CP) at 70. Mr. Graham included a short autobiographical statement recounting a downward spiral in his young life that culminated with the crime committed in January 2002, when, he states, "As I told the detectives 'I never meant to hurt anyone, my intentions were to get away of force them to kill me.' [sic] They shot at me 7 times. I just stood there until they shot me." CP at 85. The sentencing memorandum points out that "[f]ortunately, no one other than Mr. Graham was hurt during this senseless episode." CP at 67. The sentencing court had served as the trial court, and commented that it had "vivid recollections of [the] trial," including a recollection that Mr. Graham "sort of had a death wish that night." VRP at 25.

The sentencing memorandum points out that "[a]ll ten of the convictions in this case arose from a single incident which lasted no more than a few minutes." CP at 73. Mr. Graham's autobiographical statement describes his flight on foot during which he shot in the direction of police officers as lasting seven minutes; his lawyer characterizes it as lasting eight. The Supreme Court in *Graham* II characterized it as lasting "several minutes." 181 Wn.2d at 880.

The defense sentencing memorandum points out that "[a]lthough [Mr. Graham] was always willing to accept a plea deal which involved a substantial prison term, no plea bargain was ever offered by the State." CP at 68 n.1. It states, "Prior to this case, [Mr.

10

Graham] had one juvenile adjudication.[4] It is noteworthy that the adult convictions were for conduct which occurred when [Mr. Graham] was a juvenile. In other words, the charged incident constituted [Mr. Graham's] first crimes as an adult." CP at 68 n.2.

The sentencing memorandum points out that if an exceptional sentence was denied and Mr. Graham received all the good time for which he was eligible, he would serve nearly 72 years in prison; "[i]n other words, [Mr. Graham] would die in prison because of conduct which—while admittedly very serious—resulted in no physical harm to anyone other than [Mr. Graham] himself." CP at 70.

Mr. Graham presented 16 letters in support of exceptional sentencing that attested to his character. He contended that while sentencing is generally recognized as serving four purposes (incapacitation/protection of society, rehabilitation, deterrence, and retribution), none of those aims would be served by him serving a standard range sentence in excess of 82 years, "save perhaps the purely emotional and non-utilitarian purpose of retribution for its own sake." CP at 77. Finally, he contended that his continued incarceration for "decades upon decades harms both his family and the community at large, each of which will benefit from his eventual release." CP at 78.

Presented with these facts, the sentencing court undertook consideration of the policy goals expressed in RCW 9.94A.010 as required by *Graham* II. The State and the

---

[4] This is from unchallenged finding of fact 3, which is a verity on appeal.

defense disagree as to what the analysis entails. The State focuses on (1) the character and number of crimes that were charged, (2) Mr. Graham's guilt of those crimes, and (3) that his presumptive sentence reflects the manner in which the legislature intended his sentence to be calculated. But based on that reasoning, the examination that *Graham* II requires would be pointless. It would never support a mitigated sentence. The State's analysis obviously cannot be what the Supreme Court had in mind.

We find the principal guidance from the court to be its observation that "[t]he legislature recognized it could not craft a standard range that could account for all factual variations underlying offenses and offenders" and that the legislature adopted .535 as a "safety valve." *Graham* II, 181 Wn.2d at 886. The concept of "*factual variations underlying*" offenses and offenders is key. For a sentencing court to decide whether .535(1)(g) mitigation should apply, what is important is whether, considering the purposes of the SRA, the underlying facts specific to an offender and his or her offense do not warrant the punishment that the legislature projected would be appropriate in most cases.

At the second resentencing, the court considered five of the SRA's seven policy goals as applied to Mr. Graham and his actions on January 7, 2002, in determining that a downward departure was warranted.

Applying presumptive sentencing, Mr. Graham would have been sentenced to more than 69 years of incarceration before including the mandatory enhancements that

12

must run consecutively. The sentencing court reasoned that the punishment was not

proportionate to the seriousness of the offenses and Mr. Graham's criminal history, a

policy goal identified at RCW 9.94A.010(1). Specifically, the court found that

> While these are very serious offenses, the punishment is not proportionate
> to the seriousness of the offenses. It is not similar to sentences imposed for
> other crimes unless homicide. (low end standard range for one count of 1st
> murder, depending on offender score is 240 to 411 months.)

CP at 246.

It does not avail the State to protest that attempted murder and assault are serious

crimes. Neither the sentencing court nor we discount the significance of Mr. Graham's

actions. But even violent crimes of the same category and degree can reflect different

culpability and a greater or lesser infliction of harm. The veteran judge who imposed the

exceptional sentence presided at the trial and we attach great weight to her assessment.

The sentencing court noted that Mr. Graham was just shy of his 21st birthday

when the crimes were committed, that as a result of his youth he lacked maturity, and it

was to be expected that he would evolve and mature as he aged. This is a recognized

basis for mitigation. *O'Dell*, 183 Wn.2d at 695-96.[5]

---

[5] In a decision under review by our Supreme Court, we have suggested that while
a person's post-conviction rehabilitation is not a proper sentencing consideration in and
of itself *(see, e.g., State v. Freitag*, 127 Wn.2d 141, 144-45, 896 P.2d 1254 (1995))* it may
be relevant to the extent it makes it more probable that crimes committed by a youth were
a result of emotional and mental immaturity, reducing culpability. *State v. Ramos*, 189
Wn. App. 431, 459, 357 P.3d 680 (2015) (referencing *State v. Ramos*, noted at 174 Wn.
App. 1042, 2013 WL 1628255, at *11 n.12 *(Ramos IV))*, *review granted*, 185 Wn.2d

13

It is not clearly erroneous for the sentencing court to reason that an 829.5-month sentence is disproportionate to the crimes committed and the offender's prior criminal history when the offender is being sentenced for crimes committed before he turned 21 years old, the convictions are his first convictions for crimes committed over the age of majority, and when no one else was injured.

The court also reasoned that requiring Mr. Graham to serve what was essentially a life sentence would not promote respect for the law, a policy goal identified by RCW 9.94A.010(2). In orally announcing its sentence, the court observed that the standard sentence would serve no penal purpose other than retribution, and for that reason would not have promoted respect for the law. Here again, the facts relied on (Mr. Graham's age, the fact that no one else was injured, and the length of the standard sentence) are supported by the record.

The court determined the standard range punishment without enhancements of 829.5 months was not commensurate with others who commit "similar offenses," a policy goal identified by RCW 9.94A.010(3). The State points to the statutory rules for presumptive sentencing and treats "similar" as meaning an equal number of like crimes,

---

1009 (2016).

The State suggests the sentencing court improperly weighed Mr. Graham's rehabilitation in imposing an exceptional reduced sentence. Br. of Appellant at 17. Yet while the sentencing court applauded the personal development Mr. Graham had achieved following his conviction, it told him that it could not and would not consider Mr. Graham's present character as a factor in his sentence. VRP at 27.

14

rather than similar facts. But again, *Graham* II is concerned with factual variations underlying offenses and offenders. The SRA reflects legislative intent that sentences generally should account for additional harm inflicted by multiple crimes, but by providing for exceptional sentencing, it also reflects a legislative intent that sentencing courts must have authority to make exceptions.

The trial court reasoned the presumptive sentence would deny Mr. Graham the opportunity to ever live outside of prison, an opportunity that will motivate and allow prisoners to reap the benefits of self-improvement, a policy goal identified by RCW 9.94A.010(5). The State argues that whether or not he ever gets out, Mr. Graham enjoys the opportunity to improve himself in prison. While that is true, we agree with Mr. Graham that when setting sentencing ranges with the goal of rehabilitation, the legislature's purpose is not simply to "create better prisoners as opposed to better citizens." *See* Br. of Resp't at 12. The court's reasoning that by ruling out any realistic prospect of release the presumptive sentence does not advance the policy goal of offender self-improvement is not clearly erroneous.

Finally, the sentencing court found that imposing the standard range sentence of 829.5 months did not make frugal use of the State's and local government's resources, a policy goal identified by RCW 9.94A.010(6). The same facts that support the court's reasoning that the punishment was not proportionate to the seriousness of the crimes or Mr. Graham's criminal history supports the conclusion that incarcerating Mr. Graham for

15

longer than is reasonable is a misuse of State and government funds. The sentencing court's finding is not clearly erroneous.

### 2. *As a matter of law, the reasons stated as supporting the exceptional sentence justify a departure from the standard range*

We next consider the legal issue of whether stated reasons that are not clearly erroneous justify a departure from the standard range. This issue was answered by *Graham* II, which (1) held that a departure is justified when a sentence for multiple serious violent offenses is clearly excessive either by virtue of consecutive sentencing or the standard range, and (2) identified the examination required by the trial court, which we have held was properly done here. As a matter of law, the reasons stated by the court justify the departure from Mr. Graham's presumptive sentence.

### 3. *The sentencing court did not abuse its discretion by imposing a sentence that is clearly too lenient*

Finally, we must consider whether the sentence is clearly too lenient. Once the sentencing court satisfies requirements that an exceptional sentence is based on substantial and compelling reasons that justify going outside the standard range, it "is permitted to use its discretion to determine the *precise length* of the exceptional sentence." *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986) (emphasis added). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

16

Trial courts are entrusted with discretion in sentencing, just as prosecutors are entrusted with discretion in charging.[6] It is incumbent on the State when arguing that a sentencing court has abused its discretion to identify what is untenable about the court's reasoning, not just why the State disagrees with the sentence. This sentencing court presided at the trial and at the first resentencing, and was in the best position to determine a just sentence. The State had no complaints about the court's ability to exercise sound discretion at either of the first two sentencings. We have identified tenable reasons that the court offered for the departure reflected in the current sentence, relying on its familiarity with Mr. Graham and his offenses.

The State argues that the sentencing court abused its discretion by imposing a lower base sentence on Mr. Graham than it did on his less culpable codefendant, Mr. Jones. An exceptional sentence is based on a party's individual characteristics and should not be a matter of proportionality review. *State v. Ritchie*, 126 Wn.2d 388, 396-97, 894 P.2d 1308 (1995). Additionally, although Mr. Graham's base sentence is shorter than that of Mr. Jones, his full sentence, including his enhancements, is considerably longer. *See State v. Jones*, noted at 158 Wn. App. 1055, 2010 WL 5071841 (remanding

---

[6] Mr. Graham unsuccessfully complained of prosecutorial overcharging in his first appeal. As this court observed, prosecutors have discretion in their charging decisions and the court is limited in that it may not substitute its judgment for that of the prosecutor. *Jones*, 2006 WL 3479055, at *10.

17

for resentencing to reduce single firearm enhancement to single deadly weapon enhancement).

The State also points out in its reply brief that if the effect of consecutive sentencing under RCW 9.94A.589(1)(b) were entirely eliminated, Mr. Graham's presumptive sentence would still be longer than the 23 year sentence most recently imposed. But the Supreme Court held in *Graham* II that under .535(1)(g) a sentencing court can do more than impose concurrent sentences; it can impose a sentence below the standard range. What was done here is explicitly permitted by *Graham* II.

No abuse of discretion is shown. The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

18