

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36664-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BILLY J. DALAGER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J.— Billy J. Dalager appeals his Spokane County 2019 judgment and

sentence imposed following his conviction for second degree felony murder. He

contends his trial counsel provided ineffective assistance during the sentencing hearing by

failing to request an exceptional sentence downward. Finding no error, we affirm.

FACTS

Prior to July 31, 2016, Mr. Dalager was involved in an ongoing dispute with Don

Mielike over a set of car stereo speakers. On July 30, Mr. Dalager spent the day with his

brother and his fiancé, Alexis Eller, at a house on East Central Avenue in Spokane.

Sometime after midnight on July 31, Ms. Eller's mother arrived at the residence to

confront Mr. Dalager about the speakers. Mr. Dalager became angry and decided to

confront Mr. Mielike. He removed the speakers from his car and remarked, "[L]et's go

fucking beat his ass." Clerk's Papers (CP) at 4. Mr. Dalager and his fiancé got into their

vehicle and drove eastbound on Central Avenue looking for Mr. Mielike.

Mr. Dalager located Mr. Mielike on the northside of Central Avenue. As he drove

past, Mr. Dalager tossed the speakers out of the car near Mr. Mielike and then made a U-

turn to drive back towards Mr. Mielike. As Mr. Dalager approached, Mr. Mielike threw

one of the speakers at Mr. Dalager's vehicle, causing the windshield to shatter. Mr.

Dalager then accelerated and drove directly at Mr. Mielike, traveling between 30 mph and

50 mph based on witness estimates. Mr. Dalager drove over the curb and went airborne,

ultimately striking Mr. Mielike and running over him. Mr. Dalager proceeded to flee the

scene, and paramedics pronounced Mr. Mielike dead at the scene.

After waiving his *Miranda*[1] rights, Mr. Dalager informed Detective Brian Cestnik

that he had smoked marijuana and methamphetamine on the day of the incident. He

admitted that he became extremely upset over the dispute regarding the speakers, and that

he and several friends had planned to find Mr. Mielike and assault him. Mr. Dalager

further remarked that he was "[g]onna run that mother fucker down." CP at 11. Mr.

Dalager denied that he intentionally struck Mr. Mielike, but admitted that he left the

---

1 *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d (1966).

2

crime scene at a high rate of speed.

The State charged Mr. Dalager with one count of first degree murder, or alternatively one count of felony second degree murder. Prior to trial, the State and Mr. Dalager reached a plea agreement under which the State agreed to drop the first degree murder charge in exchange for Mr. Dalager pleading guilty to second degree felony murder. Mr. Dalager faced a standard range sentence of 123 months to 220 months confinement on the second degree murder charge. The agreement further provided that "[t]he parties will argue sentence within the standard range to the court at the sentencing hearing," and noted that the State "recommends 220 months." CP at 56.

The plea agreement included a statement from Mr. Dalager that at the time of the incident, he believed he was acting in self-defense and the defense of others "based on threats by Mr. M[ie]like, who was known to carry a gun." CP at 60. Mr. Dalager also acknowledged that if he went to trial, he risked being convicted of the greater offense of first degree murder. If convicted of first degree murder, Mr. Dalager would have faced a standard range sentence of 240 to 320 months.

Prior to sentencing, Mr. Dalager underwent a forensic psychological evaluation and was diagnosed with post-traumatic stress disorder (PTSD) and major depressive disorder. Defense counsel filed a memorandum in support of counsel's request for a low-end standard range sentence. Counsel asked the court to consider the mitigating factors

3

of diminished capacity to commit the offense based Mr. Dalager's purported childhood

trauma, coupled with his age and diagnosis of PTSD, and the failed defense of "self-

defense."

Counsel reiterated these mitigation arguments at the sentencing hearing, and asked

the court to consider "juvenile brain" science since Mr. Dalager was 25 at the time of the

offense. Report of Proceedings (RP) at 36. Counsel also claimed that Mr. Dalager's

traumatic childhood, when combined with his self-medication, diminished his culpability.

Counsel requested a low-end sentence but not an exceptional sentence downward. The

State recommended a high-end sentence. The sentencing court found that Mr. Dalager

had a chemical dependency that likely contributed to the offense and that Mr. Dalager had

a "terribly traumatic youth." RP at 41. However, the court also noted that many people

with traumatic youths and chemical dependency issues do not find themselves in Mr.

Dalager's position. The court further noted that it had concerns given Mr. Dalager's

violent tendencies. The court ultimately decided to impose a standard range sentence of

205 months. Mr. Dalager timely appeals.

## ANALYSIS

On appeal, Mr. Dalager claims his trial counsel provided ineffective assistance by

failing to request an exceptional sentence based on the mitigating factors enumerated in

RCW 9.94A.535(1).

4

This court reviews ineffective assistance of counsel claims de novo as they present mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove ineffective assistance, Mr. Dalager must demonstrate that his counsel's performance was deficient and this deficient performance prejudiced him. *Id.* at 687; *see also State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

To meet the deficiency prong, Mr. Dalager must show that his counsel's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This threshold is high due to the great deference afforded to decisions of defense counsel. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (defendant must overcome "a strong presumption that counsel's performance was reasonable"). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. However, a defendant can rebut this presumption by showing that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

To satisfy the prejudice prong, Mr. Dalager must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

A sentencing court must generally impose a sentence within the standard sentencing range under the Sentencing Reform Act of 1981, chapter 9.94A RCW. *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). However, the sentencing court may exercise its discretion and impose an exceptional sentence below the standard range if "substantial and compelling reasons" justify an exceptional sentence. RCW 9.94A.535. A failed defense, such as self-defense, and an impaired capacity to appreciate the wrongfulness of one's conduct or to conform one's conduct to the requirements of the law, can constitute mitigating circumstances. RCW 9.94A.535(1).

Mr. Dalager claims his counsel performed deficiently for failing to pursue an exceptional downward sentence during plea negotiations and failing to request an exceptional sentence downward at the sentencing hearing.[2]

Where the State and defendant reach a plea agreement, it is analogous to a contract right and its terms are read as a contract. *State v. Armstrong*, 109 Wn. App. 458, 461, 35 P.3d 397 (2001). If a defendant breaches the plea agreement, the State has the option to specifically enforce the agreement or move the court to rescind the agreement. *State v. Thomas*, 79 Wn. App. 32, 37, 899 P.2d 1312 (1995). In the plea bargaining context,

---

[2] Notably, Mr. Dalager does not claim the existence of a mitigating factor that counsel failed to raise, but instead claims counsel erred by failing to request an exceptional sentence based on the same mitigating factors used to argue for a low-end standard range sentence.

effective assistance requires that counsel "'actually and substantially assist his or her client in deciding whether to plead guilty.'" *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (quoting *State v. Cameron*, 30 Wn. App. 229, 232, 633 P.2d 901 (1981)).

The plea agreement allowed defense counsel to argue for a low-end standard range sentence but not an exceptional downward sentence. Mr. Dalager faults counsel for failing to seek an exceptional sentence during the plea negotiations, but there is no evidence in the record that counsel failed to do so. Moreover, Mr. Dalager fails to demonstrate a reasonable likelihood that the State would have agreed to reduce the charge to second degree murder and allow Mr. Dalager to seek an exceptional downward departure on the sentence for the reduced charge.

Mr. Dalager also faults counsel for failing to request an exceptional sentence at the sentencing hearing. However, doing so would have breached the plea agreement and risked the State repudiating the agreement and reinstating the first degree murder charge, which carried a substantially longer standard range sentence. On this record, Mr. Dalager fails to demonstrate the absence of any conceivable legitimate tactic or strategy where counsel negotiated a reduced charge for Mr. Dalager while retaining the ability to request a low-end sentence, and argued for a low-end sentence based on several mitigating factors.

Mr. Dalager also fails to demonstrate that he was prejudiced by his attorney's

performance. As previously noted, nothing in the record suggests that the State would have agreed, as part of the plea bargain, to allow defense counsel to argue for an exceptional sentence downward in conjunction with the reduced charge of second degree murder. Moreover, nothing suggests that the trial court would have imposed an exceptional sentence downward even had counsel requested one. Defense counsel presented the court with Mr. Dalager's mental health examination, his mental health disorders, his self-medication, his childhood trauma, and his "youthfulness" in support of a low-standard range. The court acknowledged these mitigating factors but also expressed concerns about Mr. Dalager's violent tendencies. He ultimately decided to impose a standard range sentence above the mid-range. On this record, Mr. Dalager demonstrates no probability that the sentencing court would have imposed an exceptional downward sentence had counsel requested one. *See e.g.*, *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 15 P.3d 719 (2001) (defendant failed to demonstrate ineffective assistance for failing to request exceptional sentence where defense counsel argued for a low-end standard range sentence based on mitigating factors and court imposed standard range sentence).

Mr. Dalager fails to demonstrate that counsel's performance was deficient or that he suffered prejudice from counsel's alleged deficiency. Accordingly, his claim of ineffective assistance fails.

No. 36664-2-III
*State v. Dalager*

CONCLUSION

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____

Siddoway, J.

WE CONCUR:

_____

Lawrence-Berrey, C.J.

_____

Korsmo, J.

9