# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52564-0-II |
| Appellant, | |
| v. | |
| PAUL TAYLOR ELLIOTT, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Paul Taylor Elliott pleaded guilty to one count of first degree theft and 16 counts of first degree identity theft. Under the multiple offense policy, the trial court calculated Elliott's offender score as 16.

At sentencing, Elliott requested an exceptional sentence below the standard range. The State requested that Elliott be sentenced within the standard range on each count. The standard sentence range was 43 to 57 months for first degree theft, and 63 to 84 months for first degree identify theft. The trial court imposed an exceptional sentence downward of 30 months on each count, to run concurrently.

The State appeals the exceptional sentence downward, arguing that the trial court incorrectly applied the multiple offense policy, incorrectly determined that the application of the multiple offense policy resulted in a sentence that was clearly excessive, and incorrectly relied on commensurate punishment when departing from the standard sentencing range. We affirm Elliott's sentence.

FACTS

Elliott worked as the bookkeeper and office manager for Nichol's Trucking for 12 years. He was responsible for billing, preparing deposit slips, generating invoices, and processing receivables, among other tasks. Elliott was never given permission to use the business credit card.

Elliott stole almost $300,000 from Nichol's Trucking between May 7, 2012 and August 26, 2015, using two different methods. First, Elliott used Nichol's Trucking's credit card 38 times to make payments into his personal Square and PayPal accounts, taking a total of $110,209.71. When the owner questioned Elliott about the Square and PayPal payments, which were mostly expensed as "repairs and services," he told her the businesses in question required payment through Square or PayPal to quickly obtain the parts needed. Clerk's Papers (CP) at 2.

Second, Elliott diverted payments owed by customers to Nichol's Trucking, diverting a total of $188,387.87.[1] Elliott hid the diverted payments by making false entries in the Nichol's Trucking ledgers to show the customers did not have any current amounts due.

During the period of Elliott's thefts, Nichol's Trucking suffered financially. The business struggled to pay for fuel, equipment replacement, and payroll for its 40 employees. The owners of the business discussed the financial situation in front of Elliott. Even after hearing the owners' concerns, Elliott continued his thefts.

The owner asked Elliott for Nichol's Trucking's bank statements, but he did not provide them. After the owner located the bank statements, Elliott resigned. Following his resignation,

---

[1] Elliott diverted the payments by directly contacting customers with current amounts due, and directing the businesses to make payments into his personal Square and PayPal accounts. The businesses were unaware they were not paying Nichol's Trucking.

Elliott sent an e-mail to the owner stating, "If there was anything I could do to make up for the betrayal and wrong I've done, I would gladly do so, but I fear that I have done too much. . . . I have been so incredibly foolish that I would risk everything for feeding an addictive behavior that was destroying me. . . . I am truly sorry for what has happened." Clerk's Papers (CP) at 19. Elliott later admitted to spending much of the money on prostitutes and strippers.

In total, the Tacoma Police Department found that Elliott stole $298,597.58 from Nichol's Trucking over the course of more than 100 separate thefts.[2] Elliott was ultimately charged with one count of first degree theft and 16 counts of identity theft in the first degree (for his uses of Nichol's Trucking's credit card that were not outside the statute of limitations).

Elliott pleaded guilty to all counts. The standard sentence range for first degree theft, with an offender score of 16, is 43 to 57 months. The standard range for first degree identity theft, with an offender score of 16, is 63 to 84 months.

At sentencing, the State requested a sentence within the standard range, and Elliott requested an exceptional sentence downward. The trial court imposed an exceptional sentence downward, sentencing Elliott to 30 months confinement on each count, to run concurrently, and 12 months in community custody.[3] In support of its downward departure, the trial court made findings of fact which included:

---

[2] The total number of thefts varies throughout the record, from 108 to 146.

[3] At the time of sentencing, the State argued against an exceptional sentence downward, pointing out that it could have alleged Elliott's crimes as a major economic offense. Major economic offenses, if found by a jury, are a potential aggravating factor for extraordinary sentences upward. RCW 9.94A.535(3)(d). The State repeats this argument in its brief. Because the State did not charge Elliot with a major economic offense, and because the State cites no law allowing this court to consider uncharged counts when reviewing a trial court's imposition of an

. . . .

2. Although Mr. Elliott statutorily qualifies for a First Time Offender Waiver, the facts of this case do not warrant a sentence under the First Time Offender Waiver.

3. The Identity Theft 1st Degree counts were a means of committing the broader theft.

4. The defendants in *State v. Oxborrow*, 106 Wn.2d 525[, 723 P.2d 1123] (1986) and *State v. Branch*, 129 Wn.2d 635[, 919 P.2d 1228] (1996) were each convicted of one count of Theft 1st Degree.

. . . .

6. The defendants in *Oxborrow* and *Branch* each faced a standard range of 0-90 days.

7. The defendant has no prior criminal history.

8. The defendant in *Oxborrow* had no criminal history and the defendant in *Branch* appeared to have no criminal history . . . .

9. The defendant in this case stole approximately $300,000.

10. The defendants in *Oxborrow* and *Branch* stole $1,000,000 and $400,000 respectively.

11. There was one victim in this case.

12. In the *Oxborrow* and *Branch* cases there were 51 and 180 victims respectively.

13. The defendants in *Oxborrow* and *Branch* could each have been charged with additional crimes.

14. All three defendants were in a position of trust.

15. All three defendants' crimes occurred over a period of time.

16. All three defendants stole a large amount of money.

17. The defendants in *Oxborrow* and *Branch* each left their cases with an offender score of 1.

18. Mr. Elliott now has an offender score of 9+ going forward.

19. The defendants in *Oxborrow* and *Branch* were each sentenced to 120 months and 48 months respectively.[4]

20. Because of the presence of the above mitigating factors, and considering the purposes of the Sentencing Reform Act[ of 1981 (SRA), ch. 9.94A RCW], sentencing within the standard range is not an appropriate sentence.

The trial court's conclusions of law state, in relevant part:

---

exceptional sentence, we do not address this argument. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6).

[4] This is partially incorrect. The defendant in *Oxborrow* received a sentence of 180 months, not 120. 106 Wn.2d at 528. However this error does not affect our analysis.

1. That there are substantial and compelling reasons justifying an exceptional sentence outside the standard range. That an exceptional sentence below the standard range is permitted and appropriate pursuant to RCW 9.94A.535(1), RCW 9.94A.010 and the multiple offense policy in RCW 9.94A.535(l)(g) because a presumptive sentence would result in a sentence that is clearly excessive.

. . . .

3. The purpose of the [SRA] in RCW 9.94A.010, particularly subsection 3, is served by providing a departure downward from the standard range in order to issue a punishment commensurate with the punishment imposed on others committing similar offenses.

4. The multiple offense policy in RCW 9.94A.535(l)(g) results in a presumptive sentence that is clearly excessive in light of the purpose of the SRA.

CP at 89-91. The State objected to findings of fact number 3, 4, 6, 8, 10-17, 19, and 20.[5]

## ANALYSIS

### I. LEGAL PRINCIPLES AND STANDARDS OF REVIEW

#### A. *EXCEPTIONAL SENTENCES UNDER THE SENTENCING REFORM ACT*

The SRA generally requires that a sentencing court impose a sentence within the standard sentencing range. RCW 9.94A.505(2)(a)(i). The SRA was designed to provide a system for sentencing that "structures, but does not eliminate, discretionary decisions affecting sentencing." RCW 9.94A.010.

A trial court may only depart from the standard sentence range "if it finds, considering the purposes of [the SRA], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. If a trial court determines that an exceptional sentence is appropriate, a reviewing court may only reverse the exceptional sentence by finding:

---

[5] Despite objecting to the trial court's findings of fact below, the State does not assign error to any findings on appeal.

(a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.585(4).

RCW 9.94A.585(4) requires courts to ask three questions, each with a different standard of review.

1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.

2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.

3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion.

*State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005) (quoting *State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997), *overruled in part on other grounds by State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015)).  Here, the State does not argue that the reasons given by the trial court are not supported by evidence, so our inquiry focuses on the second and third questions. Accordingly, the standard of review is de novo and abuse of discretion, respectively.

B.      *RCW 9.94A.535(1)(g)*

RCW 9.94A.535(1) sets forth a non-exhaustive list of illustrative mitigating factors which a trial court may use to support its decision to impose an exceptional sentence downward. The mitigating factor in dispute in this matter, the operation of the multiple offense policy, originates from 9.94A.535(1)(g):

The court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence. The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences.

. . . .

> The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

The "multiple offense policy of RCW 9.94A.589" referenced above contains five subsections. The subsection relevant to this case is 1(a), which generally requires that when a person is sentenced for two or more current offenses, the offender score for each offense be calculated as if all other current and previous convictions were prior convictions, unless two or more of the current offenses are found to be the same criminal conduct, because those offenses are then counted as one crime. RCW 9.94A.589(1)(a).

C.   STATE V. GRAHAM

Citing a number of cases, both parties rely heavily on argument regarding whether, for purposes of mitigation under the multiple offense policy, the sentencing court should have focused on whether the difference between the effect of Elliott's first theft and the cumulative effects of the subsequent thefts was "nonexistent, trivial, or trifling." Brief of Appellant at 11; Brief of Resp't at 6. The parties cite *State v. Sanchez*, 69 Wn. App. 255, 260-261, 848 P.2d 208 (1993); *State v. Hortman*, 76 Wn. App. 454, 461, 886 P.2d 234 (1994); *State v. Calvert*, 79 Wn. App. 569, 582-83, 903 P.2d 1003 (1995); and *State v. Kinneman*, 120 Wn. App. 327, 343, 84 P.3d 882 (2003), all courts of appeal cases, for this rule.

The controlling precedent in this matter, however, is our Supreme Court's decision in *State v. Graham*, 181 Wn.2d 878, 886-87, 337 P.3d 319 (2014) (*Graham* II).[6] In its decision on review in *Graham* II, Division Three of this court noted that the multiple offense policy was

---

[6] For clarity, as there are multiple Supreme Court decisions in the chain of *State v. Graham* cases, the Supreme Court decision cited in this opinion will be referred to as *Graham* II.

rejected by the trial court as a basis for a mitigated sentence because the defendant's other

current offenses could not be described as "nonexistent, trivial, or trifling." *State v. Graham*,

178 Wn. App. 580, 591, 314 P.3d 1148 (2013) (*rev'd by Graham* II, 181 Wn.2d at 878). When

presented with this specific issue, however, the Supreme Court declined to "clarify" what factual

findings a sentencing court must make to establish mitigation based on the multiple offense

policy. *Graham* II, 181 Wn.2d at 886. In its decision, the Supreme Court held that it did not

need to so clarify because RCW 9.94.535(1)(g) was "clear on that point." *Graham* II, 181

Wn.2d at 886. The Court elaborated that "[RCW 9.94.535(1)(g)] directs the judge to consider if

the presumptive sentence 'is clearly excessive in light of the purpose of this chapter, *as

expressed in RCW 9.94A.010*.'" *Graham* II, 181 Wn.2d at 886-87 (quoting RCW

9.94A.535(1)(g)). The Court then restated the seven policy goals of the SRA, and stated that

"[s]entencing judges should examine each of these policies when imposing an exceptional

sentence under .535(1)(g)." *Graham* II, 181 Wn.2d at 887. The seven policy goals the trial court

considers are:

> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
> (2) Promote respect for the law by providing punishment which is just;
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
> (4) Protect the public;
> (5) Offer the offender an opportunity to improve himself or herself;
> (6) Make frugal use of the state's and local governments' resources; and
> (7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

Notably, our Supreme Court refused to adopt the "nonexistent, trivial, or trifling"

standard. Accordingly, we proceed under *Graham* II, rather than the line of decisions beginning

with *Sanchez* that turn on whether the defendant's other current offenses could be described as "nonexistent, trivial, or trifling."

## II. ANALYSIS

The State argues that the trial court's reasons for Elliott's exceptional sentence downward do not justify a sentence outside the standard range. Specifically, the State argues that the trial court committed three errors: (1) by relying on the operation of the multiple offense policy to support the downward sentence, (2) by ruling that the standard sentence range was clearly excessive, and (3) by imposing a sentence commensurate with sentences imposed in similar cases, instead of staying within the standard sentence range. We disagree.

A.     *The Trial Court Did Not Err by Relying on the Operation of the Multiple Offense Policy*

Although the State objected to certain findings in the trial court, on appeal the State did not assign error to specific findings of fact as required by RAP 10.3(g). Because neither party assigned error to the trial court's findings of fact, they are verities on appeal. *Hoffman v. Kittitas County*, 194 Wn.2d 217, 219, 449 P.3d 277 (2019).

The exceptions in RCW 9.94A.535 were created "as a safety valve" by the legislature when it recognized it "could not craft a standard range that could account for all factual variations underlying offenses and offenders." *Graham* II, 181 Wn.2d at 886. As previously stated, 9.94A.535(1)(g) explicitly allows for mitigation and an exceptional sentence if "the operation of the multiple offense policy . . . results in a presumptive sentence that is clearly excessive." Whether the reasons given justify an exceptional sentence is a matter that we review de novo. *Law*, 154 Wn.2d at 93-94.

Here, the trial court relied on the multiple offense policy to support Elliott's exceptional sentence. In considering Elliott's sentence, the trial court found that Elliott qualified for a first time offender waiver, that the identity theft charges "were a means of committing the broader theft," that Elliott had no prior criminal history, and that his crime affected only one victim. CP at 91. The trial court considered Elliott's standard range sentence, commensurate punishments, and the purposes of the SRA, to determine that "sentencing within the standard range is not an appropriate sentence." CP at 90.

Under *Graham* II, trial courts must examine each of the seven policy goals of the SRA before imposing a mitigated sentence under the multiple offense policy. 181 Wn.2d at 886-87. Here, the trial court did just that. It considered factors that related to the purposes of the SRA, specifically mentioning Elliott's criminal history, proportionate punishment, and commensurate punishment. We hold that the trial court's reasons justify a departure from the standard range under the multiple offense policy.

B.  *The Trial Court Did Not Abuse Its Discretion by Ruling that the Standard Sentence Range was Clearly Excessive*

As an initial matter, the State appears to argue that a clearly excessive sentence, absent a valid mitigating circumstance, is insufficient to justify a downward exceptional sentence. Because there is a valid mitigating circumstance in this matter, the operation of the multiple offense policy, we do not address this argument further.

The State also argues that the trial court erred in ruling that the standard range resulted in a sentence that is clearly excessive. We disagree.

As stated above, RCW 9.94A.535(1)(g) allows a trial court to impose an exceptional sentence below the standard range if the trial court finds that operation of the multiple offense

policy of RCW 9.94A.589 "results in a presumptive sentence that is clearly excessive" in light of the purposes of the SRA. Because this argument is based on the notion that the trial court imposed a sentence that is clearly too lenient, we review this alleged error for an abuse of discretion. *Law*, 154 Wn.2d at 93.

The trial court here properly considered the SRA's policy goals to reach its determination that the presumptive sentence was clearly excessive. As discussed above the trial court considered that Elliott had no prior criminal history and qualified for a first time offender waiver, the theft charge encompassed the identity theft charges, his crime affected only one victim, and other defendants in similar positions received lesser sentences. On this record, we cannot say that the trial court abused its discretion in determining that the standard sentence range was clearly excessive.

C.      *The Trial Court Did Not Abuse Its Discretion by Imposing a Sentence Commensurate with Sentences Imposed in Similar Cases*

The State argues that the trial court erred by relying on commensurate sentences to determine the correct sentence in this case. We hold that the court's consideration of the SRA's stated purposes was not an abuse of discretion.

Although the SRA's stated purposes are not mitigating factors in and of themselves, once a trial court has identified a valid mitigating factor, the trial court may consider the SRA's purposes in determining the appropriate exceptional sentence. *State v. Alexander*, 125 Wn.2d 717, 730, 888 P.2d 1169 (1995). We review this determination for an abuse of discretion. *Law*, 154 Wn.2d at 93.

Here, after correctly determining that the operation of the multiple offense policy resulted in a sentence that was clearly excessive (a mitigating factor), the trial court relied on the

11

No. 52564-0-II

purposes of the SRA to impose an appropriate sentence.  Specifically, the trial court relied heavily on the third stated purpose of the SRA: that a sentence be "commensurate with the punishment imposed on others committing similar offenses."  RCW 9.94A.010(3).  We hold that the trial court did not abuse its discretion in doing so.

For the reasons set forth above, we hold that the findings of fact justify a departure from the standard sentence range and the trial court did not abuse its discretion when it found that the standard sentence was clearly excessive.  Accordingly, the trial court did not err when it sentenced Elliott to an exceptional downward sentence.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Melnick, J.

12