*132 Bjorgen, C.J.
¶1 — Guadalupe Solis-Diaz Jr., tried and sentenced as an adult for crimes committed while a juvenile, appeals his sentence of 1,111 months (92.6 years) in prison on six counts of first degree assault with firearm enhancements, one count of drive-by shooting, and one count of unlawful possession of a firearm. Solis-Diaz argues, and the State concedes, that the sentencing court erred by refusing to consider whether application of the multiple offense policy warranted an exceptional downward sentence. He also argues that the trial court erred by refusing to consider his youth as a mitigating factor and by imposing a 1,111-month prison term on a juvenile offender in violation of constitutional prohibitions on cruel and unusual punishment. Finally, Solis-Diaz asks us to disqualify the sentencing judge from hearing the case if we remand for resentencing, arguing that the judge’s statements at the previous sentencing hearing created the appearance of bias.
¶2 We agree with Solis-Diaz that the sentencing court erred by failing to consider an exceptional sentence below the standard range in mitigation of consecutive sentences imposed under the multiple offense policy. We also hold that the sentencing court erred by failing to consider Solis-Diaz’s age as a basis for a sentence below the standard range. Accordingly, we vacate Solis-Diaz’s sentence and remand for resentencing. On remand, the sentencing court must conduct a meaningful, individualized inquiry into whether Solis-Diaz’s youth should mitigate his sentence. Because we remand on other grounds, we do not consider whether Solis-Diaz’s sentence violates the constitutional prohibitions on cruel and unusual punishment. We decline to mandate the sentencing judge’s disqualification, but we acknowledge that Solis-Diaz is free to move for disqualification on remand.
*133 FACTS
¶3 Solis-Diaz was 16 years old in 2007, when he participated in a gang related drive-by shooting in Centraba. He was charged with six counts of first degree assault, each with a firearm sentencing enhancement; one count of drive-by shooting; and one count of second degree unlawful possession of a firearm. He was tried as an adult pursuant to former RCW 13.04.030(l)(e)(v)(A) (2005) and former RCW 9.94A.030(46)(v) (2006). The jury found him guilty on all counts, and the trial court imposed a standard-range sentence of 1,111 months in prison. Judge Nelson Hunt presided over the original sentencing.
¶4 Solis-Diaz brought a personal restraint petition challenging his sentence in this court. In an unpublished opinion, we reversed the sentence for ineffective assistance of counsel and remanded for resentencing. In re Pers. Restraint of Solis Diaz, noted at 170 Wn. App. 1039, 2012 WL 5348865, at *1, 2012 Wash. App. LEXIS 2217, at *2. Among the grounds for concluding that Solis-Diaz received ineffective assistance was his counsel’s failure to properly inform the trial court that Solis-Diaz’s case was automatically declined to adult court. 2012 WL 5348865, at *1, 2012 Wash. App. LEXIS 2217, at *4. We did not decide whether a 1,111-month fixed term sentence violated the federal constitutional prohibition of cruel and unusual punishment or the state constitutional prohibition of cruel punishment. U.S. Const, amend. VIII; Wash. Const, art. I, § 14.
¶5 Judge Hunt also presided over the resentencing. Solis-Diaz requested an exceptional downward sentence on grounds that the multiple offense policy of the Sentencing Reform Act of 1981[1] (SRA) operated to impose a clearly excessive sentence and that Solis-Diaz’s age indicated diminished capacity to understand the wrongfulness and consequences of his actions. *134 Judge Hunt denied the request and again imposed a standard-range sentence of 1,111 months in prison.
¶6 In making his ruling, Judge Hunt “ha[d] some comments to make about the finding that [Solis-Diaz’s counsel at the original sentencing] was ineffective.” Report of Proceedings (RP) at 34. He called the reasoning underlying our holding
an insult to all the trial judges in this state. To postulate that a judge would be so ignorant, lazy or stupid as to not know or inquire at some point why this 17-year-old was in adult court is incredible to me. . . .
In my case, it’s particularly insulting as [counsel] well understood my background, which consists of 17 years in prosecution, nine years in private practice . . . , and at the time three years on the bench. . . .
... [I] t is simply ludicrous to think that I would not have known what [counsel] meant when he said the defendant was auto-declined.
RP at 34-35. Judge Hunt then outlined at length his reasons for imposing a sentence at the top of the standard range:
The sentence is precisely what the Legislature intended and is frankly the only result which would withstand a legal analysis.
... I believe the original sentence accurately reflects what the legislative intent for this situation is, and there are no substantial and compelling reasons to deviate from the standard range.

... [T]he legislative intent is clear, and under the Sentencing Reform Act, punishment and accountability are the primary foci of sentencing, and serious violent crimes will be punished severely, particularly if there are multiple counts. Older teenagers will be treated as adults. And, finally, if you commit serious violent offenses while armed with a firearm, you’ll receive a severe sentence.

. . . One of the purposes of sentencing is the message that is sent to others contemplating a similar offense. . . .
*135 I don’t know where the people live who made the claim that assaults in Lewis County have remained relatively steady, but for those of us who do live here, we know this. There had been many similar incidents of gang-related violence in Centraba with the use of firearms. From the day this sentence was pronounced, there have been no similar crimes in Centraba. Gang-related violence with firearms have been virtually eliminated from Centraba.
RP at 37-44.
¶7 Judge Hunt rejected Solis-Diaz’s request to impose an exceptional sentence below the standard range. He explained that under an earlier, now reversed, decision of Division Three of our court, State v. Graham, 178 Wn. App. 580, 314 P.3d 1148 (2013) (Graham I), rev’d, 181 Wn.2d 878, 337 P.3d 319 (2014) (Graham II), he had no authority to impose an exceptional downward sentence on multiple offense policy grounds because Solis-Diaz’s convictions were for serious violent offenses, as defined in the SRA. He similarly stated that he believed State v. Ha’mim, 132 Wn.2d 834, 847, 940 P.2d 633 (1997), and State v. Scott, 72 Wn. App. 207, 219, 866 P.2d 1258 (1993), aff’d sub nom. State v. Ritchie, 126 Wn.2d 388, 894 P.2d 1308 (1995), prohibited him from considering Solis-Diaz’s youth as an indicator of diminished capacity.
¶8 Solis-Diaz appeals his sentence.
ANALYSIS
I. Consideration of Mitigating Factors: Multiple Offense Policy
¶9 Solis-Diaz argues that the sentencing court erred by failing to consider as a mitigating factor the excessive nature of the standard range sentence produced by application of the SRA’s multiple offense policy in this case. The State concedes that the sentencing court erred in refusing to consider this matter, and we accept the concession.
*136 ¶10 We review a sentencing court’s decision to deny an exceptional sentence to determine whether it failed to exercise discretion or abused its discretion by ruling on an impermissible basis. State v. McGill, 112 Wn. App. 95, 100, 47 P.3d 173 (2002). Where the sentencing court fails to exercise its discretion because it incorrectly believes it is not authorized to do so, it abuses its discretion. State v. O’Dell, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015); see also State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (noting that a sentencing court abuses its discretion by categorically refusing to consider an authorized and requested exceptional sentence).
 ¶ 11 Under the SRA, a sentencing court must generally sentence a defendant within the standard range. Graham II, 181 Wn.2d at 882. Pursuant to the SRA’s multiple offense policy, standard range sentences for multiple serious violent offenses are to be served consecutively. RCW 9.94A.589(l)(b).[2] However, “[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence.” RCW 9.94A.535(1).[3] One such mitigating circumstance exists if “[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A-.010.” RCW 9.94A.535(l)(g).[4] When the resulting set of consecutive sentences is so clearly excessive under the circumstances that it provides “ ‘substantial and compelling reasons’ ” for an exceptional sentence below the standard range, the sentencing court may grant that exceptional *137 sentence. Graham II, 181 Wn.2d at 885 (quoting RCW 9.94A.535).
¶12 The sentencing court in this case declined to consider an exceptional sentence below the standard range because it believed that the SRA’s multiple offense policy could not be the basis for mitigation of resulting consecutive sentences. It based its belief on Division Three’s opinion in Graham I. In that case, the court held that operation of the multiple offense policy to serious violent offenses was not a proper basis for an exceptional sentence. 178 Wn. App. at 590.
¶13 However, after Solis-Diaz’s resentencing our Supreme Court reversed the decision in Graham I and clarified that “a sentencing judge may invoke .535(l)(g) to impose exceptional sentences both for multiple violent and nonviolent offenses scored under .589(l)(a) and for multiple serious violent offenses under .589(l)(b).” Graham II, 181 Wn.2d at 885. Therefore, even though the sentencing court based its decision not to exercise discretion on controlling case law at the time of sentencing, the fact that our Supreme Court reversed that case law and clarified the underlying statutory provisions rendered unlawful the basis for the sentencing court’s decision. Therefore, we must vacate Solis-Diaz’s sentence and remand for resentencing. See O’Dell, 183 Wn.2d at 697; In re Pers. Restraint of Greening, 141 Wn.2d 687, 694, 9 P.3d 206 (2000). At the new sentencing, the trial court can consider whether Solis-Diaz’s sentence was clearly excessive due to operation of the multiple offense policy.
II. Youth as a Mitigating Factor
¶14 Our Supreme Court’s recent decision in O’Dell provides a separate reason why the trial court erred in failing to consider an exceptional sentence downward. Like Graham II, O’Dell issued after the resentencing of Solis-Diaz. O’Dell was convicted of rape committed just after his 18th *138 birthday. At sentencing, the trial court ruled that it could not consider O’Dell’s age as a mitigating circumstance under Ha’mim, 132 Wn.2d 834, and imposed a standard-range sentence of 95 months. O’Dell, 183 Wn.2d at 683.
¶15 The Supreme Court disagreed, holding that
in light of what we know today about adolescents’ cognitive and emotional development, we conclude that youth may, in fact, “ ‘relate to [a defendant’s] crime,’ ” [Ha’mim, 132 Wn.2d at 847] (quoting RCW 9.94A.340); that it is far more likely to diminish a defendant’s culpability than this court implied in Ha’mim; and that youth can, therefore, amount to a substantial and compelling factor, in particular cases, justifying a sentence below the standard range.
O’Dell, 183 Wn.2d at 695-96 (first alteration in original). In its analysis, the court disapproved of Scott, 72 Wn. App. at 219, an opinion from Division One of our court indicating that youthful incapacity extends only to “common teenage vice[s],” but also affirmed that youth alone does not per se indicate such incapacity. See also Ha’mim, 132 Wn.2d at 847. The Supreme Court concluded that the trial court abused its discretion by improperly declining to exercise that discretion to consider O’Dell’s youth. O’Dell, 183 Wn.2d at 697. The court accordingly remanded for a new sentencing hearing, directing the trial court to consider whether youth diminished O’Dell’s culpability. Id.
¶16 The same logic and policy that led the Supreme Court to require the consideration of the youth of a young adult offender would apply with magnified force to require the same of Solis-Diaz, who committed his crimes while a juvenile. As did the trial court in O’Dell, the trial court here decided that under Ha’mim it could not consider the defendant’s youth as a mitigating factor in sentencing. As did the trial court in O’Dell, the trial court here abused its discretion in refusing that consideration. Our Supreme Court’s analysis in O’Dell compels the same result: reversal of Solis-Diaz’s sentence and remand for a new sentencing *139 hearing to meaningfully consider whether youth diminished his culpability. Id.
III. The Nature of the Inquiry on Resentencing
¶17 We conclude above that the sentencing court erred in two ways: by failing to consider whether Solis-Diaz’s sentence was clearly excessive due to operation of the multiple offense policy and by failing to meaningfully consider whether youth diminished his culpability under O’Dell. Our Supreme Court’s analysis in O’Dell informs how the sentencing court is to consider Solis-Diaz’s youth in making these evaluations.
¶18 The court in O’Dell recognized that youth might be relevant to one of the mitigating factors listed in current RCW 9.94A.535: an impairment of the defendant’s “capacity to appreciate the wrongfulness of his conduct or [to] conform [his] conduct to the requirements of the law.” Id. at 696. O’Dell acknowledged that the United States Supreme Court has identified several different effects of youth on the capacity and culpability of juvenile offenders, arising in the context of constitutional prohibitions against cruel and unusual punishment. Id.; see also Miller v. Alabama, 567 U.S. 460, 476, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); Graham v. Florida, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); Roper v. Simmons, 543 U.S. 551, 574, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). Recognition of these effects stemmed from developments in the fields of psychology and neuroscience showing “ ‘fundamental differences between juvenile and adult minds’—for example, in‘parts of the brain involved in behavior control.’ ” Miller, 567 U.S. at 471-72 (quoting Graham, 560 U.S. at 68). The Court noted that these differences may lead to impulsive decision-making, Roper, 543 U.S. at 569, may decrease a juvenile’s ability to resist harmful influences and conform to the requirements of the law, id. at 571, and may make it more likely that a juvenile offender will reform his life, Miller, *140 567 U.S. at 472-73. Our Supreme Court in O’Dell stated that the studies underlying Miller, Roper, and Graham “establish a clear connection between youth and decreased moral culpability for criminal conduct.” 183 Wn.2d at 695.
¶19 The effects of youth on capacity and culpability are part of a multifaceted whole. In juveniles “‘[a] lack of maturity and an underdeveloped sense of responsibility ... often result in impetuous and ill-considered actions and decisions.’ ” Roper, 543 U.S. at 569 (first alteration in original) (quoting Johnson v. Texas, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). Similarly, “juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure.” Id.; see also Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988) (plurality opinion) (“Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult.”). Further, juveniles exhibit “vulnerability and comparative lack of control over their immediate surroundings” and therefore have “a greater claim than adults to be forgiven for failing to escape negative influences.” Roper, 543 U.S. at 570. The “character of a juvenile is not as well formed as that of an adult,” so “it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character.” Id. These scientific findings and their endorsement by the high courts of both the United States and Washington compel the same conclusion: a sentencing court’s evaluation of a particular juvenile offender’s circumstances must at least extend to an individualized assessment of each of these potential effects of youth.
¶20 In short, a sentencing court must take into account the observations underlying Miller, Graham, Roper, and O’Dell that generally show among juveniles a reduced sense of responsibility; increased impetuousness; increased susceptibility to outside pressures, including peer pressure; *141 and a greater claim to forgiveness and time for amendment of life. O’Dell, 183 Wn.2d at 695-96. Against this background, the sentencing court must consider whether youth diminished Soliz-Diaz’s culpability and make an individualized determination whether his “capacity to appreciate the wrongfulness of his conduct or [to] conform that conduct to the requirements of the law” was meaningfully impaired. Id. at 696.[5]
¶21 A sentencing court’s inquiry into the individual circumstances of a particular juvenile offender should take into account that offender’s level of sophistication and maturity. See id. at 697. Evidence suggesting that the offender thought and acted like a juvenile may indicate that the offender’s culpability was less than that necessary to justify imposition of a standard range sentence. See id. Similarly, evidence that the offender exhibits growing maturity and would benefit from an opportunity to rehabilitate his life may indicate that a lesser sentence will better accomplish the State’s penological goals. See id.
¶22 Consistently with O’Dell, we direct the sentencing court in this case to fully and meaningfully consider Solis-Diaz’s individual circumstances and determine whether his youth at the time he committed the offenses diminished his capacity and culpability. If the court determines that his youth did so diminish his capacity and culpability, it must consider whether an exceptional sentence below the standard range is justified based on youth. Id. at 696.
IV. Disqualification of Judge Hunt
¶23 Solis-Diaz argues that Judge Hunt should be disqualified from presiding over the resentencing proceedings. We decline to disqualify Judge Hunt, although Solis-Diaz is free to move for disqualification on remand.
*142 ¶24 Under the federal and state constitutions, a criminal defendant has the right to be tried and sentenced by an impartial court. U.S. Const, amends. VI, XIV; Wash. Const, art. I, § 22. Even the appearance of partiality can be grounds for disqualification of a judge. State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). “Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing.” Id. To establish grounds for disqualification under the doctrine, a party must show actual or potential bias. Id. at 187-88; State v. Lundy, 176 Wn. App. 96, 109, 308 P.3d 755 (2013).
¶25 However, the appearance of fairness doctrine generally is not grounds for preemptive disqualification of a judge by a remanding appeals court. State v. McEnroe, 181 Wn.2d 375, 386, 333 P.3d 402 (2014). A party usually must move before the trial court to disqualify the judge to which its case has been assigned, so the judge is allowed the first opportunity to consider recusal and the parties can develop an adequate record on the issue of disqualification. Id. at 387. Reassignment by a remanding court is proper only where
the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue.
Id. (footnotes omitted).
¶26 According to Solis-Diaz,
Judge Hunt’s extremely intemperate remarks at the sentencing hearing demonstrate that he would reasonably be expected upon remand to have substantial difficulty in putting out of his mind his previously expressed views or findings determined to be erroneous.
Br. of Appellant at 39. Solis-Diaz argues that Judge Hunt’s remarks indicated a general refusal to accept the mandate *143 of this court. However, none of Judge Hunt’s comments indicated that he would not accept or follow our mandate following this appeal. Instead, his comments expressed personal umbrage toward this court for its reasoning in ordering the previous resentencing. Whether or not these comments were inappropriate, we do not hold that they require disqualification on remand.
¶27 Judge Hunt also stated that “[t] rial courts are not to impose their own feelings on the standard range sentences, as that is what the Legislature has determined they shall be.” RP at 51. This view could reflect a general bias toward rejecting exceptional downward sentences. Judge Hunt further stated that
[t]his sentence was exactly what the Legislature intended for crimes such as this. . . .
... I would not have given a mitigated sentence had I known about the information that [was not presented at the original sentencing].... I already knew it, and I imposed the sentence I did being fully informed of the legal consequences of doing so.
RP at 53. Read in isolation, these comments seem to indicate that Judge Hunt prejudged Solis-Diaz and determined that his convictions invariably warrant his lengthy sentence.
¶28 However, read in context, Judge Hunt seems to have been ruling that the governing case law at the time prevented him from considering the mitigating factors now at issue on appeal. He stated, for example, that “[i]n my opinion, the suggested options [for mitigation] are either unlawful or legally insufficient,” RP at 48, and that “[n]one of the suggested mitigating factors recommended by the defense are legally sufficient,” RP at 53. Judge Hunt, however, has not had an opportunity to analyze whether Solis-Diaz should receive an exceptional sentence in light of O’Dell or this opinion. Without a stronger showing of bias on the issues to be addressed on remand, we will not mandate disqualification.
*144 ¶29 As we discussed above, the sentencing court on remand must exercise its discretion regarding the possibility of an exceptional downward sentence based on mitigating factors that include the application of the multiple offense policy and consideration of Solis-Diaz’s age and attendant levels of capacity and culpability. If Solis-Diaz believes that Judge Hunt cannot impartially follow our instructions and perform an individualized inquiry into the effects of Solis-Diaz’s youth, he may move for disqualification before the sentencing court. We express no opinion as to whether Judge Hunt is disqualified on that basis.
CONCLUSION
¶30 We conclude that the sentencing court erred in failing to consider whether the operation of the SRA’s multiple offense policy and Solis-Diaz’s youth at the time he committed the crimes should mitigate his standard range sentence and warrant an exceptional downward sentence. Therefore, we vacate Solis-Diaz’s sentence and remand for resentencing proceedings consistent with this opinion. We decline to disqualify Judge Hunt from making this inquiry but note that Solis-Diaz may move for disqualification before the sentencing court.
Maxa, J., concurs.

 Ch. 9.94A RCW.

 RCW 9.94A.589 was amended in 2015. This amendment did not affect subsection (l)(b).

 RCW 9.94A.535 was amended in 2016. This amendment did not affect subsection (1).

 RCW 9.94A.535 was amended in 2016. This amendment did not affect subsection (l)(g).

 We do not reach the extent of the trial court’s duty if the defendant fails to present needed evidence.