# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52599-2-II |
| Respondent, | |
| v. | |
| GUADALUPE SOLIS-DIAZ, JR. | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Guadalupe Solis-Diaz Jr. appeals his exceptional downward sentence of 360 months for a drive-by shooting that involved six uninjured victims, arguing that the court failed to consider his youthfulness and other mitigating factors.  The State disagrees, arguing that the court properly considered the operation of the multiple offense policy and other mitigating factors when it sentenced him to an exceptional sentence that was more than a 50 percent reduction from his original sentence of 1,111 months.  We hold that the trial court did not abuse its discretion by imposing an exceptional downward sentence of 360 months.  We affirm.

## FACTS

### I.  BACKGROUND[1]

At approximately midnight on August 10, 2007, 16-year-old Solis-Diaz, a passenger in a car driven by an adult male, fired seven shots into a crowd of people outside of a tavern in

---

[1] The facts in this section are derived from the record and from *In re Pers. Restraint of Diaz*, noted at 170 Wn. App. 1039, 2012 WL 5348865, unless otherwise cited.

Centralia. All, including the intended target of the drive-by shooting, escaped injury. Several days later, police arrested Solis-Diaz and charged him with six counts of first degree assault (Counts I-VI), one count of drive-by shooting (Count VII), and one count of second degree unlawful possession of a firearm (Count VIII), all counts included firearms enhancements. Because the six charges of first degree assault were considered serious violent offenses under former RCW 9.94A.030(40) (2006), Solis-Diaz was tried as an adult under former RCW 13.04.030(1)(e)(v)(E)(I) (2005).

Before trial, the State offered Solis-Diaz a plea agreement: 180 months confinement plus 24 to 48 months community supervision. Solis-Diaz declined the offer. At the end of a five-day trial, the jury found Solis-Diaz guilty of all eight counts as charged and, by special verdict, found that he committed the six assaults while armed with a firearm.

At sentencing, Solis-Diaz's counsel requested the low end of the standard range, but did not ask for an exceptional sentence below the standard range.[2] The State requested a high end sentence of 1,111 months. The trial court sentenced Solis-Diaz to 196 months on Count I, 183 months each on Counts II-VI, 27 months on Count VII, and 29 months on Count VIII in addition to community custody supervision. The trial court ran Counts I-VI consecutively as required by RCW 9.94A.589(1)(b)[3] and ran Counts VII and VIII concurrently. The trial court imposed a 60

---

[2] The total standard range (including enhancements) for each count is as follows: 162-196 months for Count I, 153-183 months for Count II, 153-183 months for Count III, 153-183 months for Count IV, 153-183 months for Count V, 153-183 months for Count VI, 21-27 months for count VII, and 22-29 months for count VIII.

[3] The legislature amended RCW 9.94A.589 in 2015. LAWS OF 2015, 2d Spec. Sess., ch., 3 § 13. Because these amendments are not relevant here, we cite to the current version of this statute.

month firearm enhancement for each count. The total time imposed was 1,111 months, or approximately 92.5 years. Solis-Diaz appealed his convictions and we affirmed his convictions and sentence. *See State v. Solis-Diaz*, noted at 152 Wn. App. 1038, 2009 WL 3261249. A mandate was issued on May 10, 2010.

On May 17, 2010, the United States Supreme Court decided *Graham v. Florida*, and held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole" and if a court "imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." 560 U.S. 48,130 S. Ct. 2011, 2030, 2034, 176 L. Ed. 2d 825 (2010). In light of *Graham* and the assistance Solis-Diaz received from counsel at his 2007 sentencing, Solis-Diaz filed a personal restraint petition (PRP) to challenge his sentence. *See In re Pers. Restraint of Diaz*, noted at 170 Wn. App. 1039, 2012 WL 5348865.

We reviewed his 2007 sentencing. We noted that neither party had prepared a presentencing report and that counsel failed to properly inform the trial court that Solis-Diaz's case was automatically declined from juvenile court by operation of statute, former RCW 13.04.030(1)(e)(v)(E)(I). As a result, no judicial officer held a declination hearing to consider his maturity and mental development and determine whether he had the mental and emotional sophistication necessary to warrant prosecution as an adult. The sentencing court determined that the drive-by shooting conviction encompassed the same criminal conduct as the assault convictions. No one spoke on Solis-Diaz's behalf, other than counsel's agreement with the court's same criminal conduct analysis and request for a low end range sentence of 927 months. We held that Solis-Diaz's counsel was ineffective at sentencing, but did not grant the request for sentencing

before a different judge, and granted the PRP in part, reversed the sentence, and remanded the case for resentencing.

On remand, the State asked the court to "conduct an individualized determination of the propriety of an exceptional downward sentence," due to the recent changes in the law regarding considering youthfulness and other mitigation factors for a juvenile offender. *State v. Solis-Diaz*, 187 Wn.2d 535, 537, 387 P.3d 703 (2017). The State requested that the court impose the same 1,111 month sentence. *Solis-Diaz*, 187 Wn.2d at 537. Solis-Diaz's counsel requested an exceptional downward sentence of 180 months (15 years) based on grounds that the multiple offense policy of the Sentencing Reform Act of 1981 (SRA)[4] operated to impose a clearly excessive sentence and based on Solis-Diaz's age which indicated he had a diminished capacity to understand the wrongfulness and consequences of his actions. *State v. Solis-Diaz*, 194 Wn. App. 129, 134, 376 P.3d 458 (2016), *reversed*, 187 Wn.2d 535 (2017).

The same judge presided over the sentencing hearing and determined that it could not sentence Solis-Diaz to an exceptional sentence below the standard range because consecutive sentences were required under the multiple offense policy of the SRA. *Solis-Diaz*, 194 Wn. App. at 135. The trial court then again imposed the same 1,111 month fixed term sentence. *Solis-Diaz*, 194 Wn. App. at 133.

Solis-Diaz appealed the sentence and we remanded the matter back to the trial court, concluding that "the sentencing court erred in failing to consider whether the operation of the . . . multiple offense policy and Solis-Diaz's youth at the time he committed the crimes should mitigate

---

[4] Ch. 9.94A RCW.

his standard range sentence and warrant an exceptional downward sentence." *Solis-Diaz*, 194 Wn. App. at 144.

## II. THIRD SENTENCING

On July 10, 2018, a third sentencing hearing was held. The trial court stated,

> I do intend to hear everything that you want to present, but I want you to know that I have prepared for today's hearing. I've read everything that's been presented, and to the extent that that alters what you intend to put before me today, I'll leave that to your discretion.

Report of Proceedings (RP) at 8. Several attorneys represented Solis-Diaz and submitted significant mitigation materials to the court in the form of briefing, a sentencing mitigation video, live testimony, and several declarations. The witnesses who testified were: Dr. Kate McLaughlin, an adolescent brain scientist; Dr. Ronald Roesch, a professor of psychology and the director of the Mental Health Law and Policy Institute at Simon Frazier University in Vancouver, British Columbia; Jesse Dow, the intended victim of Solis-Diaz's shooting, and Solis-Diaz himself.

Dr. McLaughlin's testimony focused on adolescent brain development and how adolescents are influenced by their surroundings and their peers. She explained, in general, how adolescents differ from adults when it comes to their decision making abilities and what that looks like in real world application.

Dr. Roesch also testified. Dr. Roesch tested Solis-Diaz in 2014 and retested him in 2018. Dr. Roesch drafted a report and explained that Solis-Diaz in 2018 presented as "substantially different" with evidence of significant maturation, and was "stable, self-confident, and relaxed," and did not show the same tendencies for "impulsive and self-destructive behaviors that were noted [in] 2014." Clerk's Papers (CP) at 60. Dr. Roesch testified that Solis-Diaz was "showing less anti-

social features, more empathy, more contrition, more respect for the rights of others, and also thinking more about the long-term consequences of decisions that he made then back 10 or 11 years ago, and the decisions he's making now in terms of planning for his future." RP at 50.

Jesse Dow, the victim of Count I, testified that he believed Solis-Diaz had served enough time and deserved a second chance. Solis-Diaz addressed the court directly, apologizing to his victims and explaining how much he has grown and changed.

The State recommended that Solis-Diaz serve a total sentence of 525 months, or 43.75 years. The State noted that its recommended sentence was more than a 50 percent reduction from the original sentence of 1,111 months and the sentence recognized that children are different from adults. Solis-Diaz's counsel requested credit for time served[5] or if that was not sufficient, a 15 year sentence.

Before imposing the sentence, the court explained that he was familiar with the latest research on adolescent brain development and that there were multiple options for resentencing. He also indicated:

> I will state for the record that I've considered all of the evidence that's been presented before and during today's hearing. I've looked at the *Miller* factors. I am going to impose an exceptional sentence downward. It's based on youth as a mitigating factor. It's based on the application of the *Miller* factors. It's based on the multi-offense policy of the Sentencing Reform Act. And just to be thorough, I reviewed RCW 9.94A.535, and I looked at each one of the mitigating factors to see if any of the others might apply.

RP at 87.

---

[5] Solis-Diaz was 27 years old and had served 11 years by the time of the third sentencing hearing.

The court found that Solis-Diaz had committed the charged offenses[6] as to counts I-VII, that he had used a firearm, that he was a juvenile at the time, that a juvenile's brain is different than a fully developed brain, and that this different development is a factor recognized and considered by the parties and the court. Based on its findings, the court concluded that under *Miller*, an exceptional sentence downward was appropriate and it sentenced Solis-Diaz to 360 months, or 30 years as follows: Count I, a sentence of zero days; Counts II-VI, a sentence of 60 months per count to run consecutively; Counts I-VI, a sentence of 60 months on each count for the firearm enhancements to run concurrently; Count V, a sentence of 27 months, to run concurrently; Count VIII, a sentence of 29 months to run concurrently.

The court credited Solis-Diaz for 4,093 days for time served, including 2,382 days from his 2014 judgment and sentence, plus 1,711 days until entry of the 2018 judgment and sentence. The court also imposed community custody supervision, but those are not challenged on appeal. The court entered written findings of fact, conclusions of law, and the judgment and sentence. Defense counsel filed a motion to reconsider supported by declarations from two of the victims, Sean Thomas and Cassandra Norskog. The court denied the motion.

Solis-Diaz timely appeals the judgment and sentence resulting from the third sentencing.

ANALYSIS

Solis-Diaz argues that the trial court abused its discretion by imposing an exceptional downward sentence of 360 months, or 30 years. He argues that the sentence is clearly excessive

---

[6] Counts I-VI were charged as one count of assault in the first degree for each victim under RCW 9A.36.011(1)(A). Count VII was charged as a drive by shooting under RCW 9A.36.045(1) and Count VIII was charged as second degree unlawful possession of a firearm under former RCW 9.41.040(2)(a)(iii) (2005).

and the court failed to adequately consider the operation of the multiple offense policy under the SRA and other mitigating factors such as his youthfulness. The State argues the trial court properly considered the multiple offense policy and the mitigating factors, and thus, the sentence is not excessive. We hold that because the court properly considered the multiple offense policy and the mitigating factors, the trial court did not abuse its discretion by imposing an exception downward sentence of 360 months, or 30 years.

## I. LEGAL PRINCIPLES

We review the appropriateness of an exceptional sentence by answering the following three questions:

"1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.

2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.

3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion."

*State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005) (quoting *State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997). Here, Solis-Diaz's appeal focuses on the third question. The trial court abuses its discretion when it bases its decision on untenable reasons or grounds or the decision is manifestly unreasonable. *State v. Solomon*, 3 Wn. App. 2d 895, 910, 419 P.3d 436 (2018).

When sentencing a juvenile offender, a court must consider the juvenile's youthfulness and other mitigation circumstances related to the juvenile's youth, to include, "age and its 'hallmark features,' such as the juvenile's 'immaturity, impetuosity, and failure to appreciate risks and consequences.'" *State v. Houston-Sconiers*, 188 Wn.2d 1, 23, 391 P.3d 409 (2017) (quoting *Miller*

*v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 2468, 183 L. Ed. 2d 407 (2012)). The court also must consider other factors, including the extent of the juvenile's participation in the crime, what pressures may have affected the juvenile such as familial or peer, and the nature of the family circumstances and surrounding environment. *Houston-Sconiers*, 188 Wn.2d at 23. The trial court also "must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated." *Houston-Sconiers*, 188 Wn.2d at 23.

## II. EXCEPTIONAL DOWNWARD SENTENCE

Solis-Diaz argues that the sentence of 360 months was clearly excessive for a 16-year-old with no criminal history who committed offenses that did not result in death or serious bodily injury when considering the multiple offense policy and other mitigating factors under *Miller*.[7] Solis-Diaz points out that Jesse Dow, the person targeted in the shooting, testified on his behalf and requested that he be immediately released because he had already served 11 years of the sentence.

The State recommended a 586 month downward reduction from the original 1,111 month fixed term sentence, or 525 months (43.75 years). Solis-Diaz's attorney recommended credit for time served, or if that was not sufficient, a 15 year sentence. The trial court considered all of the testimony, all of the evidence, and the arguments presented before rendering its decision. The trial court noted how helpful the hearing was and explained its challenge was to craft a sentence for Solis-Diaz somewhere between, the presumptive sentence he was previously given (1,111 months)

---

[7] Solis-Diaz also argues that his sentence was excessive as compared to other cases. This is a proportionality challenge of a sentence length which is not allowed. In determining whether a sentence is clearly excessive, we are prohibited from comparing the underlying sentence with other cases for proportionality. *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995).

and the credit for time served, 11 years. The trial court stated, "I make it a point to not make a decision until I've heard everything, and that is the case today, but I did look at many ways of figuring out what would be an outcome that would make sense, [and] that would be a logical framework." RP at 86. The trial court discussed how it considered the State's recommendation, a bottom range sentence, whether to run the firearms enhancements consecutive or concurrently, and the different options for sentencing. RP 86-87.

Before imposing its sentence, the trial court explained:

I will state for the record that I've considered all of the evidence that's been presented before and during today's hearing. I've looked at the *Miller* factors. I am going to impose an exceptional sentence downward. It's based on youth as a mitigating factor. It's based on the application of the *Miller* factors. It's based on the multi-offense policy of the Sentencing Reform Act. And just to be thorough, I reviewed RCW 9.94A.535, and I looked at each one of the mitigating factors to see if any of the others might apply.

RP at 87.

The court considered Solis-Diaz's youth and his complete lack of criminal history prior to the crime. It considered his childhood, the issues his mother had, his father not being a factor in his life, and why he turned to gangs. The court also considered his difficulties in school as a special education student and his frequent absenteeism and truancy.

Lastly, the court considered the testimony by two experts, Dr. McLaughlin and Dr. Roesch, regarding youth, its hallmarks, how the nature of family circumstances and peer pressure affect a juvenile, the ability to rehabilitate juveniles in general, and the changes in Solis-Diaz since he had committed the crime 11 years earlier. Specifically, Dr. Roesch explained in his report that Solis-Diaz in 2018 presented as "substantially different" with evidence of significant maturation, was "stable, self-confident, and relaxed," and did not show the same tendencies for "impulsive and

self-destructive behaviors that were noted in 2014." CP at 60. Dr. Roesch testified that Solis-Diaz was "showing less anti-social features, more empathy, more contrition, more respect for the rights of others, and also thinking more about the long-term consequences of decisions that he made then back 10 or 11 years ago, and the decisions he's making now in terms of planning for his future." RP at 50. Finally, Solis-Diaz spoke to the trial court directly, apologized to his victims and explained how much he has grown and changed.

The court found that Solis-Diaz committed the charged offenses, and as to counts I-VII, that he had used a firearm, he was a juvenile at the time, a juvenile's brain is different than a fully developed brain, and this development is a factor recognized and considered by the parties and the court. The court then concluded that under *Miller*, an exceptional downward sentence was appropriate and sentenced Solis-Diaz to 360 months, or 30 years, as follows: Count I, a sentence of zero days; Counts II-VI, a sentence of 60 months per count to run consecutively; Counts I-VI, a sentence of 60 months on each count for the firearm enhancements to run concurrently; Count V, a sentence of 27 months, to run concurrently; Count VIII, a sentence of 29 months to run concurrently. The court credited Solis-Diaz for 4,093 days for time served, including 2,382 days from his 2014 judgment and sentence, plus 1,711 days until entry of the 2018 judgment and sentence.

The trial court's exceptional downward sentence reflects a careful balance between acknowledging Solis-Diaz's youthfulness, the clearly excessive sentence that would result from the multiple offense policy under RCW 9.94A.589, and the six victims. Because the trial court properly considered all mitigating factors before imposing an exceptional downward sentence of

No. 52599-2-II

360 months, we hold that the trial court did not abuse its discretion and we affirm Solis-Diaz's sentence.

## CONCLUSION

We hold that the trial court did not abuse its discretion by imposing an exceptional downward sentence of 360 months. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

WORSWICK, J.