# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Appellant,<br><br>   v.<br><br>DAVID CARPENTER ANDERSON,<br><br>     Respondent. | No. 83896-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — David Carpenter Anderson was originally sentenced in 1997, at the age of 17, to four mandatory life terms without the possibility of parole for the aggravated murders of Rose, Bill, Kim, and Julia Wilson. In March 2022, Anderson was resentenced pursuant to *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and our *Miller*-fix statutes, RCW 10.95.030(3) and RCW 10.95.035, to "an indeterminant sentence of 33 years to life." The State appeals the trial court's sentence. Because we agree with the State that the trial court misinterpreted controlling case law regarding de facto life sentences of juvenile offenders, we remand for resentencing.

I

In 1997, Anderson and his friend Alex Baranyi brutally murdered Rose, Bill, Kim, and Julia Wilson. Anderson and Baranyi had discussed killing the Wilsons for

more than a year. Anderson had researched the possible punishments for murder and, according to witnesses who testified at trial, knew he would not face the death penalty if he committed the murders prior to turning 18. Anderson was just shy of turning 18 years old at the time of the murders.

Anderson was subsequently charged with and convicted of four counts of aggravated murder. He was originally sentenced in 1997 to four mandatory life terms without the possibility of parole. Fifteen years later, the United States Supreme Court decided *Miller*, and held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Id*. at 470. Although the Court still permitted nonmandatory life-without-parole sentences for juvenile offenders, the Court "require[d the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

In response to *Miller*, the Washington legislature enacted what are commonly referred to as the *Miller*-fix statutes, RCW 10.95.030(3) and RCW 10.95.035. Relevant here, RCW 10.95.030(3)(b) provides:

> In setting a minimum term, the court must take into account mitigating factors that account for the diminished culpability of youth as provided in *Miller v. Alabama*, [567 U.S. 460] 132 S. Ct. 2455 [183 L.Ed.2d 407] (2012)[,] including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated.

Additionally, under RCW 10.95.035(1), any juvenile offender who had been sentenced to life without parole prior to June 1, 2014 "shall be returned to the sentencing court or the sentencing court's successor for sentencing consistent with RCW 10.95.030."

Anderson was resentenced under *Miller* and the *Miller*-fix statutes in March 2022. Since his original sentencing in 1997, Anderson had maintained his innocence. But when Anderson learned he was entitled to resentencing under *Miller* and the *Miller*-fix statutes, he decided he "had to say [he] did this . . . [and] [a]ccept full responsibility." Following a two-day hearing in which the court considered Anderson's testimony, the testimony of several expert witnesses, and each of the mitigating factors set forth in RCW 10.95.030(3)(b), the court resentenced Anderson to "an indeterminate sentence of 33 years to life."

At the time of the resentencing, the controlling Washington Supreme Court decision regarding de facto life sentences of juvenile offenders was *State v. Haag*, 198 Wn.2d 309, 495 P.3d 241 (2021). As discussed below, the trial court resentenced Anderson based on its interpretation of *Haag*. The State appealed the trial court's resentencing ruling and, while the appeal was pending, our Supreme Court clarified its holding in *Haag* in *State v. Tonelli Anderson*, 200 Wn.2d 266, P.3d 1213 (2022).[1] The State asserts that the trial court misinterpreted *Haag* as clarified in *Tonelli Anderson* and asks that we remand for resentencing.

II

A

Preliminarily, Anderson argues that the State cannot appeal the trial court's resentencing decision. We disagree.

Under RAP 2.2(b)(6)(B), the State may appeal in a criminal case where the sentence "involves a miscalculation of the standard range." Case law similarly

---

[1] To avoid confusion with David Anderson (the defendant and respondent herein), the Washington Supreme Court's opinion in *State v. Anderson* is referred to as *Tonelli Anderson* (the defendant's full name).

holds that the State is entitled to appeal a sentence within the standard range when it is challenging "the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision." *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). Here, the State argues that the trial court misinterpreted controlling case law regarding de facto life sentences of juvenile offenders and therefore incorrectly determined Anderson's sentence. Such an appeal is permitted under both RAP 2.2(b)(6)(B) and applicable case law.

Notwithstanding the above analysis, Anderson argues that RAP 2.2(b)(6)(B) does not apply here because there is no standard range for aggravated murder. The Sentencing Reform Act (SRA) defines "standard sentence range" as "the sentencing court's discretionary range in imposing a nonappealable sentence." RCW 9.94A.030(49). Based on this definition in the SRA, it is clear that RCW 10.95.030(3)(a)(ii) provides a standard range discretionary sentence for any person who is convicted of the crime of aggravated murder when the person is at least 16 but less than 18 years old, such that they "shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years." The statute thus creates a standard range from a minimum term of 25 years to a maximum term of life imprisonment.

Where, as here, the trial court misinterprets the law that governs its discretion within that standard range, RAP 2.2(b)(6)(B) and applicable case law permit the State to appeal. We reject Anderson's contrary argument.[2]

---

[2] Because we hold that the State can properly appeal the trial court's sentencing ruling under RAP 2.2(b)(6)(B), we need not reach its argument that its appeal is also permitted by RAP 2.2(b)(6)(C).

B

We next address the merits of the State's argument that resentencing is required because the trial court misinterpreted controlling case law regarding de facto life sentences of juvenile offenders. "An appellate court will reverse a sentencing court's decision only if it finds a clear abuse of discretion or a misapplication of the law." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds; this standard is also violated when a trial court makes a reasonable decision but applies the wrong legal standard or bases its ruling on an erroneous view of the law." *State v. Corona*, 164 Wn. App. 76, 78-79, 261 P.3d 680 (2011). "When we review whether a trial court applied an incorrect legal standard, we review de novo the choice of law and its application to the facts in the case." *Id.* at 79.

The trial court here applied an incorrect legal standard when resentencing Anderson. Summarizing the Supreme Court's holding in *Haag*, the court stated:

> Where a court finds based on the approach I've just outlined and the facts of the case that a minimum sentence above 25 years is appropriate, our State Supreme Court has held that there's a limitation on the length of sentence the court may impose. The court must not impose a sentence that would amount to a de facto life sentence. That is the recent decision of the State Supreme Court in *State v. Haag*.

Thus, the trial court read *Haag* to impose a categorical bar prohibiting the imposition of de facto life sentences on <u>all</u> juvenile offenders.

This same interpretation of *Haag* also led the trial court to reject the State's recommended sentence. The State proposed a 45-year sentence rather than a

longer sentence that, the prosecutor believed, would not be permitted under *Haag*. In response, the trial court stated:

> In this case, the State proposes a minimum sentence of 45 years. Such a sentence would mean that Mr. Anderson would not be released from custody until he reaches the age of 62, only one year shy of the age of 63 in the *Haag* case. For the reasons explained by the Supreme Court in *Haag*, *a 45-year sentence would be an unconstitutional de facto life sentence and this court cannot follow the State's suggestion*.

(Emphasis added.) Based on its interpretation of *Haag*, as indicated above, the trial court rejected the State's recommendation and sentenced Anderson to "an indeterminate sentence of 33 years to life."

Six months after the trial court resentenced Anderson, our Supreme Court clarified its holding in *Haag* as follows:

> *Haag* is properly understood as announcing that article I, section 14 of Washington's constitution limits the category of juvenile offenders who can receive de facto life without parole (LWOP) sentences, the harshest punishments possible for juvenile offenders under Washington law. In *Haag*, we determined that a particular juvenile offender could not receive such a harsh punishment because his crime reflected youthful immaturity, impetuosity, and failure to appreciate risks and consequences. But when, as here, a juvenile offender's crimes do not reflect those mitigating qualities of youth, Washington's constitution does not bar a de facto LWOP sentence.

*Tonelli Anderson*, 200 Wn.2d at 269. Thus, contrary to the trial court's prior interpretation of *Haag*, if a juvenile offender's crime does not reflect the mitigating qualities of youth (which *Tonelli Anderson* states are "youthful immaturity, impetuosity, and failure to appreciate risks and consequences"), a de facto life sentence is permissible. *Id.* The trial court here misinterpreted *Haag* as clarified in *Tonelli Anderson*.

Having concluded that the trial court applied an incorrect legal standard when resentencing Anderson, we next consider whether to remand for another

resentencing. Our Supreme Court has instructed us that when a trial court incorrectly determines the standard range or applies an incorrect legal standard in sentencing, as the trial court did here, "remand for resentencing is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." *State v. Parker*, 132 Wn.2d 182, 192-93, 937 P.2d 575 (1997). The record here does not clearly indicate that the sentencing court would have imposed the same sentence anyway. That is so for at least two reasons.

First, the trial court's misinterpretation of *Haag* is consequential. Based on its interpretation of *Haag*, the trial court concluded that it "*must not* impose a sentence that would amount to a de facto life sentence" and rejected the State's recommended sentence, which the State itself limited to 45 years to avoid running afoul of *Haag*. (Emphasis added.) Applying *Haag*, the trial court erroneously concluded that the upper limit of the permissible sentencing range was substantially less than 45 years and "must allow Mr. Anderson a meaningful opportunity to return to society and not deprive him of a meaningful life." But under *Haag* as clarified in *Tonelli Anderson*, these limitations apply *only* if Anderson's crimes do not reflect the mitigating qualities of youth. On this record, we cannot conclude that the sentencing court here would have imposed the same sentence had it correctly interpreted *Haag* and correctly determined the permissible sentencing range.

Second, *Tonelli Anderson* requires a meaningful, individualized inquiry regarding "the extent to which a juvenile offender's crime reflects youthful immaturity, impetuosity, or failure to appreciate risks and consequences," 200 Wn.2d at 289 n.9, and no such inquiry occurred here. Anderson emphasizes the

trial court's statement at the resentencing hearing that "the three experts who evaluated Mr. Anderson all agreed that Mr. Anderson's criminal conduct, as extreme and horrific as it was, was adolescent limited. It resulted from a form of transient adolescent conduct disorder." But the trial court considered this testimony when applying the legal framework set forth in RCW 10.95.030(3)(b); it did not (because it could not) expressly consider whether Anderson's crime reflected the mitigating qualities of youth as required to bar a de facto life sentence under *Tonelli Anderson*.

The differences between the *Miller*-fix analysis and the *Tonelli Anderson* considerations are significant. Under RCW 10.95.030(3)(b), courts must consider "the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated." Additionally, our Supreme Court emphasized in *Haag* "that *Miller*-fix hearings must be forward looking, not backward looking." 198 Wn.2d at 322. Under *Tonelli Anderson*, in contrast, "Washington courts should consider the extent to which a juvenile offender's crime reflects youthful immaturity, impetuosity, or failure to appreciate risks and consequences." 200 Wn.2d at 289 n.9. This analysis focuses on the juvenile offender's crime—not on the youth's chances of becoming rehabilitated—and is in that sense backward rather than forward looking. Because these tests differ substantially, we cannot say that the record here clearly establishes that the trial court would have imposed the same sentence had it applied the legal framework in *Tonelli Anderson* in addition to the *Miller*-fix analysis in RCW 10.95.030(3)(b).

For the above reasons, we remand the matter so that the trial court here, like the trial court in *Tonelli Anderson*, can properly exercise its discretion "following meaningful consideration of mitigation evidence and the circumstances of Anderson's offenses." 200 Wn.2d at 292. As *State v. Solis-Diaz* confirms, "the sentencing court must conduct a meaningful, individualized inquiry into whether [Anderson's] youth should mitigate his sentence." 194 Wn. App. 129, 132, 376 P.3d 458 (2016), *rev'd on other grounds*, 187 Wn.2d 535, 387 P.3d 703 (2017). Without the benefit of the Supreme Court's subsequent opinion in *Tonelli Anderson*, the trial court could not—and did not—conduct this meaningful and individualized inquiry. The court should do so on remand.

III

The State properly appealed the trial court's sentencing ruling under RAP 2.2(b)(6)(B). Because the trial court misinterpreted controlling case law regarding de facto life sentences of juvenile offenders, we remand for resentencing.

Feldman, J.

WE CONCUR:

Coburn, J.

Dwyer, J.